UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 86-21474 |
| | : | CHAPTER 11 |
| EARNED CAPITAL CORPORATION, | : | |
| DEBTOR | : | |
| | : | |
| MARY GERUSCHAT, DOLORES | : | ADVERSARY NO. 04-3236 |
| SPENEY, ANTOINETTE MOROCCO, | : | |
| DONNA MOROCCO BUXTON, | : | |
| ET AL, Plaintiffs | : | |
| vs. | : | |
| ERNST & YOUNG, LLP AND | : | |
| CHARLES MODISPACHER, | : | |
| Defendants | : | |

APPEARANCES:

CHRISTOPHER P. SCHULLER, ESQ., PITTSBURGH, PA, ATTORNEY FOR
DEFENDANTS
VICTOR H. PRIBONIC, ESQ., WHITE OAK, PA, ATTORNEY FOR PLAINTIFFS

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

SEPTEMBER
~~AUGUST~~    2   , 2005

OPINION

I.  Introduction

The within Adversary Complaint was commenced when the Defendants in a state court

action removed the pending Complaint to this Court and then filed a Motion to Dismiss the

Complaint.  The Plaintiffs contest this Court's jurisdiction and have filed Motion to Remand to

the state court.

We have considered the numerous pleadings and briefs filed by the parties and have

heard the argument of counsel on both the Motion to Remand and the Motion to Dismiss and

find that the matters are ripe for decision.

1

## II.  Pleadings

### A.  Notice of Removal

The Defendants, Ernst & Young, LLP ("E&Y") and Charles Modispacher ("Modispacher") or ("E&Y and Modispacher", collectively the "Defendants") commenced this Adversary by filing a Notice of Removal of State Court Action to Bankruptcy Court ("Notice of Removal") on November 5, 2004.  Defendants removed an action that was pending in the Court of Common Pleas of Butler County, Pennsylvania ("State Court") at Civil Action No. AD04-11170 ("State Court Action").

### B.  Complaint

Mary Geruschat, Dolores Speney, Antoinette Morocco and Donna Morocco Buxton (collectively, "Plaintiffs")[1] filed a three count Complaint in which they assert causes of action for: Count I - Professional Negligence; Count II - Fraud and Deceit; and Count III - Negligent Misrepresentation.

Plaintiffs allege that while serving as accountants in the bankruptcy case of the predecessor entities to Seven Fields Development Corporation ("Seven Fields"), the Defendants, during the course of the bankruptcy proceedings, made false and erroneous statements concerning the solvency of the Debtor entities when the accountants improperly characterized certain amounts of equity as debt.  The Plaintiffs assert that the accountants' actions caused the successor entity, Seven Fields, to liquidate its assets in a manner calculated to liquidate the assets

---

[1]Plaintiffs also assert that the Complaint is filed on behalf of a larger class of persons comprised of Plaintiffs and other similarly situated individuals.

as soon as possible rather than judicially manage and develop the assets in a way to maximize

the return to the Plaintiffs (and other shareholders) and that as a result of such actions, Plaintiffs

and the class that they purport to represent have suffered significant damage.

### C.  Jury Demand

In response to the Notice of Removal, Plaintiffs filed a Demand for Trial by Jury.

### D.  Plaintiffs' Statement

On November 22, 2004, Plaintiffs filed PLAINTIFFS' STATEMENT PURSUANT TO

BANKRUPTCY RULE 9027(e)(3) ("Statement").  In the Statement, Plaintiffs deny Defendants'

allegation that the within Complaint involves a "core" matter and assert that the action is "non-

core."  The Plaintiffs further state that they do not consent to the entry of final orders on

judgments by the bankruptcy judge and that "neither the bankruptcy court nor the federal court

has jurisdiction" over the pending cause of action.

### E.  Defendants' Response to Plaintiffs' Statement

In response to the Plaintiffs' Statement, Defendants reassert that this is a core matter and

further assert that the Plaintiffs waived the right to challenge the Defendants' allegation that the

Adversary proceeding is a core proceeding by failing to file the Statement Pursuant to

Fed.R.Bankr.P. 9027(e)(3) within ten days after the Defendants filed the Notice of Removal.

3

### F.  Motion to Remand

PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT ("Motion to

Remand") is also before the Court.  The Plaintiffs assert that Removal is improper because the

State Court Action is not related to and has no "close nexus" to the bankruptcy case and

therefore, this Court lacks subject matter jurisdiction over the proceeding; that the matter is not a

"core" proceeding under 28 U.S.C. §157(b)(1) and, therefore, the Court must necessarily abstain

from exercising jurisdiction under 28 U.S.C. §1334(c)(2); that even if the matter could be

considered a core proceeding, the Court should abstain from asserting jurisdiction under

§1334(c)(1); and finally that remand to the State Court is required as the Notice of Removal was

incorrectly filed in the Bankruptcy Court rather than in the United States District Court.[2]


### G.  Motion to Strike

PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' NOTICE OF REMOVAL

("Motion to Strike") was filed on December 20, 2004.  Plaintiffs assert that the Court must strike

the Defendants' Notice of Removal because a party may not remove a state court action to

bankruptcy court where the underlying bankruptcy case to which the state court action is being

removed was closed prior to the existence of the state court action and because Defendants failed

to reopen the case prior to filing the Notice of Removal.

---

[2]Along with the Motion to Remand, Plaintiffs filed a Motion to Hold in Abeyance Defendants' Motion to Dismiss (the "Abeyance Motion") pending resolution of the Motion to Remand.  By Order dated December 7, 2004, we granted the Abeyance Motion, but by Order dated February 15, 2005, vacated the Order and ordered Plaintiffs to file a response and brief in opposition to the Motion to Dismiss.

## H.  Defendants' Response to Motion to Strike

Defendants respond that an open bankruptcy case is not required for bankruptcy court jurisdiction; that if the case need be reopened, the Court can act <u>sua sponte</u>; that the Notice of Removal should be treated as a Motion to Reopen; or, if reopening is required, Defendants request leave to file an appropriate motion.

## I.  Motion to Dismiss

Three days after the filing of the Notice of Removal, DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT ("Motion to Dismiss") was docketed.  Defendants assert that the Complaint must be dismissed for various reasons which, <u>inter alia</u>, include:

1.  Plaintiffs' claims are shareholder derivative claims which they have inappropriately commenced in their individual capacities and prior to making a demand that the corporate entity itself pursue the claims.

2.  Plaintiffs' claims are barred by the Statute of Limitations.

3.  Plaintiffs' claims are barred by the doctrines of res judicata, collateral estoppel and/or judicial estoppel.

4.  The Defendants have immunity for the statements made during judicial proceedings.

5.  The professional negligence claim must be dismissed for the reason of lack of privity between the Defendants and the Plaintiffs.

## J.  Plaintiffs' Response to Motion to Dismiss

The Plaintiffs oppose the Motion to Dismiss.  Plaintiffs assert that:

1. Defendants lack standing to challenge Plaintiffs' claims on the basis that the claims are derivative.

2. Defendants' reliance on items outside the record to challenge the specific date on which the Plaintiffs discovered their cause of action is not appropriately presented in a Motion to Dismiss.

3. The Defendants are themselves precluded from raising the defenses of res judicata, collateral estoppel and judicial estoppel as a basis to dismiss the Complaint because the State Court has previously decided such issues to their detriment.  For this same reason, Plaintiffs oppose the remainder of Defendants' Motion to Dismiss wherein they assert that Plaintiffs have failed to state claims for professional negligence, fraud, negligent misrepresentation, and that Defendants are "immune" from liability.


### III.  Factual Background

On June 3, 1986, Earned Capital Corporation, Managed Properties, Inc., Canterbury Village, Inc. and Eastern Arabian, Inc. (collectively, the "Debtors") filed separate voluntary Petitions under Chapter 11 of the Bankruptcy Code.  By Order dated June 5, 1986, the Court ordered that the separate cases be jointly administered under the case entitled Earned Capital Corporation at Case No. 86-21474 (the "Bankruptcy Case").

The Debtors were engaged in the business of selling shares of investment in various property where investors were promised a certain annual return on investment.  Shares were oversold when Debtors had to continue the selling program in order to maintain the payments to investors.

Debtors' financial affairs were in disarray and the affairs of each of the Debtors were substantially intertwined.  E&Y was engaged as accountants for the Debtors in the Bankruptcy Case.  The Debtor had minimal debt to ordinary trade creditors and some $6,000,000 in debt to creditors holding secured claims against Debtors' property.  The vast majority of Debtors' obligations, which totaled over $60,000,000, were owed to those thousands of individuals who had made investments in the Debtors ("Investors")[3].  In exchange for depositing monies with the Debtors, the Investors had received various documents entitled "Agreement of Sale" for fractional interests in real estate, various agreements to document the purchase of fractional interests in horses, documents entitled "Lease and Breeding Management Agreement" and "Bond and Warrant."  The exact status of the Investors was unknown, i.e., whether they were investors, bondholders, or some other form of general creditor.  They were all referred to as the investor class or the Investors and were treated as the only creditors in the Bankruptcy Case who were impaired and at risk.  Many of the Investors, including Plaintiffs Antoinette Morocco and Donna Morocco Buxton, filed proofs of claim as unsecured creditors.

The Investors were appointed to and represented by the Official Committee of Unsecured Creditors in the Bankruptcy Case ("Committee").  The Committee was represented by legal counsel and took a very active role in the Bankruptcy Case.

The Debtors and the Committee filed competing plans of reorganization.  Both plans contemplated substantive consolidation of the assets and liabilities into one surviving reorganized corporation.  The Amended Plan of Reorganization of Committee of Unsecured Creditors (the "Plan") was confirmed by the Court on October 21, 1987 after an evidentiary

---

[3]Plaintiffs allege that there are as many as 2,700 similarly situated individuals.

hearing to consider whether substantive consolidation was appropriate. This Court found that each of the Debtors was insolvent and that substantive consolidation was appropriate.

The Investor class of creditors voted overwhelmingly in favor of the Plan. The Investor class cast 2,286 ballots representing claims of $77,072,274. The voting was as follows:

| Number of Ballots | Yes/No | Amount |
|---|---|---|
| 2,179 | Yes | $62,639,067 |
| 87 | No | 13,758,972 |

The preamble to the Plan identifies the makeup of the Committee:

"The COMMITTEE OF UNSECURED CREDITORS, being commonly referred to as consisting of 'investors' and/or 'bondholders' hereby submits the following Plan. . . ." The Disclosure Statement which accompanied the Plan sets forth the unsecured debt of the Debtors:

> F.  Unsecured debt
>         1.  Trade creditors - These are itemized at Schedule A-3-1 filed by Debtors. The total is $56,402.98.
>         2.  "Bondholders" and "Investors" - these groups of creditors were designated as indicated in the Schedules filed by Debtors. These designations may not be wholly accurate, depending upon characterizations of the relationships between the named persons in the schedules and the Debtors. However, for purposes of the Bankruptcy Code and the Plans filed these parties are all unsecured creditors. The total scheduled debt is $69,194,842.74.

Under the Plan, the Debtors were merged into one successor entity that was eventually named Seven Fields. All of the Debtors' assets were pooled and became assets of Seven Fields.

The only impaired class of creditors under the Plan was the Investor class of unsecured creditors (described in the Plan as the Class 5 claims). Secured creditors and trade creditors were paid in full. Under the Plan, each unsecured creditor received common stock in Seven Fields at a par value equal to 5% of its allowed claim. The remaining 95% of each allowed

8

claim remained as an unsecured, nondischargeable debt.  The Investors became the new

shareholders of the reorganized Seven Fields and thus were in control of the assets, sale or

development of those assets, and distribution of funds.  The former equityholders of the Debtor

retained no interest under the terms of the Plan.

The Plan contemplated that the Investor class of creditors would manage Seven Fields

with a goal of full recovery of the invested amounts.  The Plan provides:

> 6.08 The surviving corporation, as may be authorized by its Board of Directors,
> shall periodically distribute available funds, without interest, in prorata repayment
> of the aforesaid waived non-discharged Class 5 debts.
> 6.09 Assets will be sold or managed frugally, carefully, responsibly and utilizing
> sound business practices.  Undeveloped assets will be developed as and when fair
> and reasonable proposals have been received, studied and approved.  All activities
> of the surviving reorganized corporation shall seek to achieve the goal of full
> payment to Class 5 creditors.

The Plan provides for the Debtors' Chapter 11 cases to remain open until all unsecured

claims are paid in full:

> 8.05 These Chapter 11 cases shall not be closed or deemed closed until all non-
> discharged Class 5 claims have been fully paid and all matters set forth in section
> 9.01 have been finally concluded.

Section 9.01 of the Plan sets forth the retention of jurisdiction provisions.  It provides in

relevant part:

> The Bankruptcy Court shall retain exclusive jurisdiction [in] this case as long as
> necessary for the following purposes:
> . . .
> (b) to determine and fix (1) all administrative claims. . .
> . . .
> (d) to adjudicate any matters or disputes arising under or in connection with (I)
> the Plan and (ii) such other matters as may be provided for in the Confirmation
> Order;
> . . .
> (·) to hear and determine any and all pending applications, motions, adversary
> proceedings or contested matters;

9

(g) to amend, or to correct any defect, cure any omissions or reconcile any
inconsistency in the Plan or the Confirmation Order as may be necessary, to carry
out the purpose and intent of the Plan. . .
. . .
(I) to issue such orders as may be necessary to enable the surviving reorganized
Debtor to implement this Plan and effect distributions to holders of claims.
(j) to hear and determine any and all adversary proceedings or contested matters
to be filed subsequent to the Confirmation Date.
. . .

E&Y was engaged by the Debtors. E&Y's work product was shared with the Committee.

E&Y filed Applications for Allowance of Compensation. Each Application was the subject of

an objection by the Committee. An evidentiary hearing was held and partial interim fees were

awarded. The unpaid portion was the subject of subsequent stipulation between E&Y and Seven

Fields for the payment of remaining fees in a reduced amount. The Stipulation was approved by

the Court.

On April 30, 1996, Seven Fields filed a Motion for Final Decree. On May 14, 1996, the

Final Decree was entered and the case closed on the Court's docket.


## IV.  Discussion

### 1. Motion to Remand

#### A.  Removal to Bankruptcy Court

The Plaintiffs assert that the Defendants' removal of the Complaint from State Court to

the Bankruptcy Court was improper, and that the Complaint should have been removed to the

United States District Court. This issue was recently addressed in the case of In re Coastal

Plains, Inc., 326 BR 102 (Bankr. ND TX, 2005):

> The Plaintiffs argue that the Trustee's removal of this proceeding from state court
> to the bankruptcy court was improper, and that the proceeding instead should

have been removed to the district court.  Plaintiffs state that the remedy for this
error is to remand the case to state court, where any further attempt at removal
will be untimely.  The Trustee argues that removal to the bankruptcy court was
proper.

Some authority supports Plaintiffs' position.  See In re Schuler, 45 B.R. 684, 686
(Bankr.D.N.D.1985) (finding that "No mention is made of the bankruptcy court"
in section 1452).  However, the majority of courts to look at this issue have found
that removal to the bankruptcy court is proper.  Braden Partners, L.P. v.
Hometech Medical Services, Inc., 2003 WL 223423 (N.D.Cal.2003) (citing In re
Aztec Industries, Inc., 84 B.R. 464 (N.D.Ohio 1987); In re Princess Louise Corp.,
77 B.R. 766, 768 (Bankr.CD Cal.1987); In re Convent Guardian Corp., 75 B.R.
346, 347 (Bankr.E.D.Pa.1987); Matter of Centro de Transmisiones Automaticas,
73 B.R. 297, 298 (Bankr.D.Puerto Rico 1987); In re North American Funding
Corp., 64 B.R. 795, 796 (Bankr.S.D.Tex.1986); In re Finley, 62 B.R. 361, 365
(Bankr.N.D.Ga.1986); Matter of Cassidy Land & Cattle Co., 62 B.R. 93, 96
(Bankr.D.Neb.1986); In re Commercial Oil Service, Inc., 58 B.R. 311, 314
(Bankr.N.D.Ohio 1986), aff'd sub nom. State of Ohio v. Commercial Oil Service,
Inc., 88 Bankr.126 (N.D.Ohio 1987); In re Gianakas, 56 B.R. 747, 750-753
(N.D.Ill.1985); In re Philadelphia Gold Corp., 56 B.R. 87, 89-90
(Bankr.E.D.Pa.1985).  This Court finds the majority view to be the correct one.

Id.

We likewise agree with the majority view and find that removal to the Bankruptcy Court

is proper.


## B.  Closed Case

The Plaintiffs assert that the Notice of Removal must be stricken because Defendants are

pursuing removal without first reopening the Bankruptcy Case.

The case was closed on the Court's docket on May 14, 1996.   The terms of the Plan can

be construed to mean that even though the case is closed on the docket, the case remains open

until all Class 5 claims have been paid in full.

Even if the case is considered closed, "[a] court's jurisdiction 'does not evaporate with

the closing of a bankruptcy case.'" In re Sterling Optical Corp., 302 BR 792, 808 (Bankr. SD NY 2003) quoting Speleos v. McCarthy, 201 BR 325, 329 (D DC 1996). "To the contrary, the closing of a bankruptcy case is simply an administrative matter, and 'does not affect a bankruptcy court's jurisdiction to determine matters relevant to the case'." Sterling Optical at 808 quoting In re Taylor, 216 BR 515, 521 (Bankr. ED PA 1998).

Further, 11 U.S.C. §350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). "While no party sought the reopening, 11 U.S.C. §105(a) empower[s] the bankruptcy court to reopen the case on its own motion. Donaldson v. Bernstein, 104 F3d 547, 552 (3rd Cir. 1997).

To the extent that reopening is necessary or required, we will direct the Clerk to reopen the case so that these matters that have a significant connection with the administration of the case can be addressed.

## C. Jurisdiction

Federal bankruptcy jurisdiction was recently discussed by the Court of Appeals for the Third Circuit in the case of In re Combustion Engineering, Inc., 391 F3d 190 (3rd Cir. 2005):

> Federal bankruptcy jurisdiction is defined by 28 U.S.C. § 1334. Section 1334(b) confers upon the district courts "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(a) of the Bankruptcy Code permits district courts to refer most matters to a bankruptcy court. See 28 U.S.C. §§ 157(a), 151. This broad jurisdictional grant allows bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

"Bankruptcy court jurisdiction potentially extends to four types of title 11 matters: '(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'" Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 162 (3d Cir. 2004) (quoting Torkelsen v. Maggio (In re guild & Gallery Plus), 72 F.3d 1171, 1175 (3d Cir. 1996)). Cases under title 11, proceeding arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. [FN 38]    In re Resorts Int'l, Inc., 372 F.3d at 162 (citing 1 Collier on Bankruptcy, ¶ 3.02[2], at 3-35 (15th ed. Rev.2003)). . .

. . .

FN 38. "[C]ases under Title 11," as used in 28 U.S.C. § 1334(a), "refers merely to the bankruptcy petition itself." In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991) (quoting Matter of Wood, 825 F.2d 90, 92 (5th Cir.1987)). The term "proceeding," on the other hand, as used in 28 U.S.C. § 1334(b), refers "to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter." In re Wolverine Radio Co., 930 F.2d 1132, 1141 n. 14 (6th Cir.1991) (citing 2 Collier on Bankruptcy ¶ 301.03 (15th ed.1990)). Put differently, "anything that occurs within a case is a proceeding," see 1 Collier on Bankruptcy ¶ 3.01[4][b] at 3-19 (15th Ed. Rev.2003) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977)), including all "controversies, adversary proceedings, contested matters, suits, actions or disputes." Id. ¶ 3.01[3] at 3-13.

In re Combustion Engineering, Inc., 391 F.3d at 225-26 (3d Cir. 2005).

On its face, section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction. Nonetheless, courts sometimes have found a need to curtail the reach of related to jurisdiction in the post-confirmation context so that bankruptcy court jurisdiction does not continue indefinitely. See, e.g., In re Pegasus Gold Corp., 394 F.3d 1189, 1193-94 (9th Cir.2005) (suggesting that post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction); In re Resorts Int'l, Inc., 372 F.3d 154, 164-69 (3d Cir.2004) (similar).

In re Boston Regional Medical Center, Inc., 410 F3d 100, 106 (1st Cir. 2005).

The Court of Appeals for the Third Circuit has also recently addressed the jurisdiction of

the bankruptcy court to hear an action commenced after confirmation of a plan of reorganization.

In re Resorts Int'l, Inc., 372 F3d 154 (3d Cir. 2004) "[W]here there is a close nexus to the

bankruptcy plan or proceeding. . .retention of post-confirmation bankruptcy court jurisdiction is

13

normally appropriate." Id. at 168-69.

In Resorts, the basis of the claim was misconduct by the accounting firm for a Litigation

Trust post-confirmation. Id. at 169. Resorts is unlike the situation here, where the Plaintiffs'

claims are claims against a court appointed professional for work performed during the

bankruptcy case.

The facts of the present case are analogous to the facts in In re Southmark Corp., 163 F3d

925 (5th Cir. 1999), where the claims of professional malpractice were based on services

provided during the bankruptcy, under the supervision of, and subject to the approval of, the

bankruptcy court. Id. The Plaintiffs' claims against the Defendants "implicate the integrity of

the bankruptcy process." Donaldson v. Bernstein, 104 F3d at 553. The claim is a claim "arising

in" a bankruptcy case and as a result, this court has jurisdiction. Heck-Dance v. Cardona-

Jimenez, 102 Fed.Appx. 171 (1st Cir. 2004); Grausz, M.D. v. Englander, 321 F3d 467, 471 (4th

Cir. 2003); In re Southmark Corp., 163 F3d 925 (5th Cir. 1999); In re LGI, Inc., 322 BR 95

(Bankr.D.NJ 2005).


### D.  Core v. Non-Core Matter

"A proceeding is core under [28 U.S.C.] §157 if it invokes a substantive right provided

by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a

bankruptcy case." In re The Guild and Gallery Plus, Inc., 72 F3d 1171, 1178 (3d Cir. 1996)

quoting In re Marcus Hook Dev. Park, Inc., 943 F2d 261, 267 (3d Cir. 1991).

As the Court in Southmark stated in concluding that the malpractice claims against the

accounting firm were core matters:

14

Southmark also disputes that its claims could arise "only in the context of a bankruptcy case," inasmuch as Southmark could have sued any accounting firm that worked for it on similar grounds of disloyalty, non-disclosure and malpractice. It is somewhat disingenuous for Southmark to attempt to pry these claims out of their bankruptcy setting. Southmark's petition alleges inter alia claims for breaches of fiduciary duty and of the contract whose terms were approved by the bankruptcy court. Southmark prays for actual damages including return of the entire $4 million fee it paid Coopers from money belonging to the debtor's estate. The fee award was both approved by the bankruptcy court and subjected to the bankruptcy court's later disgorgement order.

In this case, the professional malpractice claims alleged against Coopers are inseparable from the bankruptcy context. A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. See generally 11 U.S.C. §§ 321, 322, 324, 326-331. Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable professional malpractice standards. For instance, in Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3d Cir. 1994), the professional malpractice allegations included the attorneys' failure to comply with court orders and to submit a plan of reorganization to the bankruptcy court. Award of the professional's fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.

Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims. Excessive professional fees or fees charged for mediocre or, worse, phantom work also cause the estate and the creditors to suffer.

. . .

Although surprisingly few court of appeals cases have explored the boundaries of bankruptcy courts' core jurisdiction in the wake of Marathon, at least three

decisions are premised on the understanding that professional malpractice claims against court-appointed professionals are indeed core matters. <u>See</u> <u>Billing</u>, 22 F.3d 1242; <u>Walsh v. Northwestern Nat'l Ins. Co.</u>, 51 F.3d 1473, 1476 (9th Cir. 1995); <u>Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.</u>, 973 F.2d 474, 483 n. 4 (6th Cir. 1992). No appeals court decision has held otherwise. In one case against a bankruptcy trustee to recover property that did not belong to the debtors' estate, the court rejected subject matter jurisdiction founded on either core or related-to-bankruptcy jurisdiction. <u>In re Guild and Gallery Plus, Inc.</u>, 72 F.3d 1171, 1173 (3d Cir. 1996).

Southmark's lawsuit draws into question Coopers' performance of its duties under court order, and it seeks in part to recover on the claim Southmark would have had against Drexel. For these and other reasons just discussed, we conclude that Southmark's case against Coopers is a core proceeding in bankruptcy.

<u>In re Southmark Corp.</u>, 163 F3d at 930-31.

We likewise conclude that the Plaintiffs' Complaint against the Defendants is a core proceeding.

## E.  Abstention

28 U.S.C. §1334(c)(1) provides:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. §1334(c)(1).

"Because this is a core proceeding, the bankruptcy court [has] discretion whether to abstain from hearing it." <u>Southmark</u> at 931. "[W]e are mindful that federal courts generally should exercise their jurisdiction if it is properly conferred, and that abstention is the exception rather than the rule." <u>In re Phelps Technologies, Inc.</u>., 238 BR 819, 822 (Bankr. WD MO 1999) <u>citing</u> <u>Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.</u>, 6 F3d 1184, 1189 (7th Cir.

1993); <u>see</u> <u>also</u> <u>In re Williams</u>, 256 BR 885, 893-94 (8th Cir. BAP 2001).

We have considerable latitude in deciding whether to abstain.

"Permissive abstention from core proceedings under 28 U.S.C. §1334(c)(1) is left to the bankruptcy court's discretion." <u>In re Petrie Retail, Inc.</u>, 304 F.3d 223, 232 (2d Cir.2002).

In determining whether to exercise permissive abstention under §1334(c) courts have considered one or more (not necessarily all) of twelve factors: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

<u>In re Balco Equities, Ltd., Inc.</u>, 323 BR 85, 92-93 (Bankr. SD NY 2005) <u>quoting</u> <u>In re Cody, Inc.</u>, 281 BR 182, 190-91 (SD NY 2002).

"Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative."

<u>Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.</u>, 6 F3d at 1189.

Applying these factors, we conclude that abstention is not appropriate. Of particular relevance to our determination are the facts that the issues presented by the Complaint represent a core proceeding, and therefore, all of the factors pertaining to non-core proceedings are inapplicable; and the fact that the Complaint involves the nature of the services that the Defendants performed for the bankruptcy estate as court appointed professionals and the fees awarded under supervision of this court. The issues are at the heart of the bankruptcy court's

jurisdiction and are inextricably related to the bankruptcy case. The interests of justice would be dissserved were we to abstain from hearing and deciding these issues.

The Plaintiffs' Motion to Remand Case to State Court will be refused.

## 2. Motion to Dismiss

### A. Standard for Motion to Dismiss

"In considering a motion to dismiss, a court must accept all of the factual allegations in the complaint and draw all reasonable inferences from those facts in favor of plaintiffs." Lum v. Bank of America, 361 F3d 217, 223 (3d Cir. 2004) citing Moore v. Tartler, 986 F2d 682, 685 (3d Cir. 1993). "A court may dismiss the Complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Lum at 223 citing Hishon v. King & Spalding, 467 US 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In the present case, accepting all of the allegations in the Complaint as true and drawing every reasonable inference in favor of the Plaintiffs, we conclude that Plaintiffs fail to state a claim for relief, for the reasons discussed below.

### B. Shareholder Derivative Lawsuit

Pennsylvania law defines a shareholder's derivative action as an "action or proceeding brought to enforce a secondary right on the part of one or more shareholders of a business corporation against any present or former officer or director of the corporation because the corporation refuses to enforce rights that may properly be asserted by it." 15 Pa.C.S. § 1782(a). See also Pa.R.Civ.P. 1506(a) (a shareholder's derivative action is one brought "to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it").

18

In Davis v. U.S. Gypsum Co., 451 F.2d 659 (3rd Cir. 1971), the Third Circuit
distinguished between a derivative action and an individual action as follows:

It is hornbook law that claims asserted for the benefit of stockholders qua
stockholders in a corporation because of the tortious acts of its officers or those
actions in conjunction with them is a class suit, a derivative action, and recovery
is for the benefit of the corporation directly and indirectly to its stockholders.  It is
equally clear that where a corporation, tortiously conspires with others to damage
an individual and does so a cause of action arises which belongs to the individual.

451 F.2d at 662.  Pennsylvania corporate commentators also recognize this
distinction:

Where there is a breach of the contract existing between the corporation and a
shareholder by reason of his status as a shareholder, as distinguished from a
breach of a contract between the corporation and a third person; or where there is
a breach of the fiduciary duty which the directors, officers, or majority
shareholders owe to a shareholder or the minority shareholders, as such, as
distinguished from the breach of such a duty owed to the corporation, the
shareholder injury by such breach has a direct, personal cause of action.

W. Edward Sell & William H. Clark, Jr., Pennsylvania Business Corporations
(1997) § 1782.2.  See also William M. Fletcher, 12B Cyclopedia of the Law of
Private Corporations ("Fletcher") § 5911 ("[i]f the injury is one to the plaintiff as
a shareholder as an individual, and not to the corporation, as where the action is
based on a contract to which the shareholder is a party, . . .it is an individual
action").

First Republic Bank v. Brand, No. 147 Aug. Term 2000, 2001 WL 1807749 (Pa. Com. PL. June
1, 2001).

The Court agrees with the Defendants that the Plaintiffs' claims are shareholder

derivative claims that can only be presented by the Plaintiffs through a shareholder derivative

lawsuit.  In the Complaint, Plaintiffs assert that they "are now or formerly [were] shareholders of

Seven Fields Development, Inc."  Plaintiffs further assert that the Complaint is filed on behalf of

all current or former shareholders of Seven Fields stock and assert that "the damages suffered by

each of the Plaintiff class in the form of investments lost in respect to the relative share they

could have received" are common to all members of the class.  The Plaintiffs further allege that

19

"as investors/shareholders, the relationship of each of them to the Defendants and the successor corporation are substantially identical" and all holders of Seven Fields stock have "suffered identical losses relative to the amounts of the investment and the potential for return loss."

The Plaintiffs allege to have suffered indirect harm through asserted losses on their stock investment which stems from the alleged diminution in value of their corporation. This type of injury is a corporate injury. Plaintiffs have no standing to prosecute litigation in their own name to recover for this type of injury.

> A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue. Ash v. International Business Machines, 353 F.2d 491 (3 Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); Loeb v. Eastman Kodak Co., 183 F.704 (3 Cir. 1910).

Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir. 1970). The only way Plaintiffs can bring the claims is through a shareholder derivative lawsuit.

Prior to commencing a shareholder derivative lawsuit, shareholders must ordinarily make a demand on the board of directors or comparable authority to pursue the claim. Fed.R.Civ.P. 231; Warden v. McLelland, 288 F3d 105, 110-111 (3d Cir. 2002).

> Under Pennsylvania law, a shareholder cannot ordinarily bring an action on behalf of the corporation without first making demand on the board of directors to pursue the action. Cuker v. Mikalauskas, 547 Pa. 600, 692 A.2d 1042, 1049-50 (1997). In Cuker, the Pennsylvania Supreme Court expressly adopted several sections of the American Law Institute's Principles of Corporate Governance, including the section setting forth the demand requirement. Section 7.03(b) provides, "Demand on the board should be excused only if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of

20

the action." Id. at 1050.  Prior to Cuker, "[s]ufficient averments of fraud excused a demand based upon its futility." Drain v. Covenant Life Ins. Co., 551 Pa. 570, 712 A.2d 273, 278 (1998).  But "Cuker, which established that a demand is excused only if irreparable harm to the corporation is shown, changed the law on demand requirements in derivative actions." Id.

Id. (footnote omitted).

A shareholder may not bring a derivative action unless the "complaint alleges, with particularity, the efforts made by the shareholders to obtain corporate action and the reason for failure to obtain it." Shlensky v. Dorsey, 574 F2d 131, 140 (3d Cir. 1978).

Plaintiffs assert that "[t]he corporation that defendants insist should have had the initial opportunity to prosecute plaintiffs' cause of action has not existed for many years, thus rendering any such prerequisite 'unavailing' or 'futile'."

Public records may be considered in ruling upon a motion to dismiss.  Children's Seashore House v. Waldman, 197 F3d 654, 661 n.7 (3d Cir. 1999); Shaffer v. South State Machinery, Inc., 995 F.Supp. 584, 586 n.3 (WD Pa. 1998).  As the Defendants state in their Reply Memorandum of Law, undisputed public records reveal that:

> As of October 11, 1994, Seven Fields Development Corporation and Seven Fields Development Company (a Pennsylvania business trust) merged and continued operating as a business trust under the name of "Seven Fields Development Company." (Reply Affirmation, Exhibit B).

> Under the merger agreement, all property rights of Seven Fields Development Corporation, including all choses in action, became property of the Seven Fields Development Company. (Reply Affirmation, Exhibit B, ¶ 7(a)(ii).

> Within the past year, the trustee for Seven fields Development Company ("Trustee") has participated in litigation to assert property rights of Seven Fields Development Corporation. (Reply Affirmation, Exhibit C).

> On June 8, 2004, the Trustee commenced litigation against the state court judgment creditor Barbara L. Reilly ("Mrs. Reilly") arguing that any recovery by Mrs. Reilly against Defendants arising out of the bankruptcy is property of the

2,600 shareholders of Seven Fields Development Corporation (including Plaintiffs) who are now the beneficiaries of the trust. (Reply Affirmation, Exhibit C).

Plaintiffs had actual notice through their agent that the Trustee was pursuing claims on behalf of Seven Fields Development Corporation. On June 8, 2004, the Trustee commenced litigation against Mrs. Reilly (Reply Affirmation, Exhibit B). On August 20, 2004, Mrs. Reilly filed a motion to dismiss, and was represented by Pribanic & Pribanic, P.C. (Reply Affirmation, Exhibit D and E). On September 29, 2004, Plaintiffs' attorneys Pribanic & Pribanic, P.C. commenced the instant action. Prior to filing the instant action, therefore, Plaintiffs' agent Pribanic & Pribanic, P.C. knew that the Trustee had authority to pursue claims owned by Seven Fields Development Corporation and had exercised such authority on more than one occasion.

The Plaintiffs failed to make the required demand before initiating the Complaint. Plaintiffs' assertion that such demand would have been "unavailing" or "futile," is without merit.

Plaintiffs further assert that the Defendants lack standing to enforce the demand requirement for a shareholder derivative claim. "[I]t is well settled, contrary to the plaintiffs' contention, that defendants other than the corporation whose rights the shareholder plaintiffs are seeking to vindicate may successfully raise the defense of failure to comply with rule 231." Shlensky, 574 F2d at 142.

Plaintiffs have brought this suit in their individual capacities and also to represent other identically situated individual shareholders. Plaintiffs demand that damages be paid directly to themselves. Plaintiffs did not bring an action in the name of the corporation seeking to enforce the corporation's rights, nor have they alleged that any demand was made upon the corporation to commence such action. Plaintiffs' claims must be dismissed.


### C.  Res Judicata, Collateral Estoppel and Judicial Estoppel

Having concluded that the within Complaint must be dismissed as an improper

shareholder derivative lawsuit, we need go no further.  However, we feel compelled to address

the doctrines of res judicata, collateral estoppel and judicial estoppel.

This Bankruptcy Case involved a Debtor which operated a scheme whereby Investors

were duped into putting money into the debtor corporation with promises of unrealistically high

rates of return over short periods of time.  At filing, Debtor owed these Investors in the

neighborhood of $69 million dollars.  Other debt, consisting of secured claims and usual and

ordinary trade debt, paled in comparison.  A Committee of unsecured creditors was formed.  The

Committee was comprised of and represented all of those individuals who were duped into

making investments in the Debtor corporations.  The status of the Investors was unclear.  They

were called inter alia investors, bondholders or shareholders.  No matter what label they were

given, they were all considered and treated as unsecured creditors in the Bankruptcy Case.  The

Plaintiffs who bring the within Complaint were members of that constituency.  They were

represented by the creditors Committee which took a very active part in the case.  Plaintiffs,

whether directly or through their Committee, had every opportunity to litigate, investigate and

question every aspect of the Debtor's operation, finances, assets and valuations.  If they had any

concern about insolvency or valuation analyses, they had every right and opportunity to engage

their own professionals.  It was the Plaintiffs' constituency by and through their Committee that

proposed a competing plan of reorganization and sought confirmation of that plan by the Court.

It was the Plaintiffs' constituency that objected to E&Y's fee application and eventually,

following confirmation, it was the Plaintiffs' company that reached a settlement of the amount of

the fee that E&Y would receive, and sought Court approval of that settlement.  Upon

confirmation of the Plan, the Plaintiffs and the class that they purport to represent became the

23

shareholders of the new corporation, later known as Seven fields, and were solely in control of

all of the Debtor's assets and were free to choose whether to develop or to liquidate those assets

as they saw fit.

The doctrines of claim preclusion and issue preclusion (res judicata and collateral

estoppel) bar an action when the foundation upon which the claims rest has already been

litigated.  Core States Bank, N.A. v. Huls America, Inc., 176 F3d 187 (3d Cir. 1994).

In Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra, 983
F.2d 495 (3d Cir. 1992), we explained that claim preclusion (or res judicata as it
is also called) "gives dispositive effect to a prior judgment if a particular issue,
although not litigated, could have been raised in the earlier proceeding.  Claim
preclusion requires: (1) a final judgment on the merits in a prior suit involving:
(2) the same parties or their privities; and (3) a subsequent suit based on the same
cause of action."  Centra, 983 F.2d at 504 (emphasis added; citations omitted).  If
these three factors are present, a claim that was or could have been raised
previously must be dismissed as precluded.

We have elaborated on the third element of the Centra test, both in general and in
the context of bankruptcy proceedings.  In deciding whether two suits are based
on the same "cause of action," we take a broad view, looking to whether there is
an "essential similarity of the underlying events giving rise to the various legal
claims."  United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984); see
also Restatement (Second) of Judgments § 24 cmt. a ("The present trend is to see
claim in factual [as opposed to legal] terms and to make it coterminous with the
transaction regardless of the number of substantive theories. . .that may be
available to the plaintiff. . ."); id. cmt. b ("In general, the expression
['transaction'] connotes a natural grouping or common nucleus of operative
facts.").  Because a "bankruptcy case" is fundamentally different from the typical
civil action, however, comparison of a bankruptcy proceeding with another
proceeding is not susceptible to the standard res judicata analysis.  "Rather, we
scrutinize the totality of the circumstances in each action and then determine
whether the primary test of Athlone, i.e., essential similarity in the underlying
events, has been satisfied."  Oneida Motor Freight, Inc. v. United Jersey Bank,
848 F.2d 414, 419 n. 5 (3d Cir. 1988).

The principle of claim preclusion applies to final orders overruling objections to a
reorganization plan in bankruptcy proceedings just as it does to any other final
judgment on a claim.  See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II,
Ltd.), 898 F.2d 1544, 1552 (11th Cir. 1990) ("Because the claims raised in the

24

Wallises' adversary complaint were already raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims."); see also Katchen v. Landy, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." (quoting n re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989))); Crop-Maker Soil Servs. V. Fairmount State Bank, 881 F.2d 436, 440 (7th Cir. 1989) ("Public policy supports res judicata generally, but in the bankruptcy context in particular."); cf. 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind. . .any creditor. . .whether or not the claim or interest of such creditor. . .is impaired under the plan and whether or not such creditor. . .has accepted the plan.").

Id. at 194-95.

.     The Plaintiffs and the class that they purport to represent proposed a Plan which provided for substantive consolidation of the Debtor entities based on their collective insolvency. Following an evidentiary hearing at which the issue was litigated, we found that the Debtor entities were in fact insolvent and confirmed the Committee Plan. The Plaintiffs herein, as constituents of the Committee, may not now change their position regarding the Debtor's solvency.

Plaintiffs' instant claims are based upon a single premise: the Debtor entities were not insolvent and because of the perception of insolvency, Seven Fields sold assets too quickly at a loss to Plaintiffs' interests.

A Plan is binding upon all parties once it is confirmed, and all questions that were raised or could have been raised pertaining to such plan are res judicata. B. R. Eubanks, M.D. v. Federal Deposit Insurance Corp., 977 F.2d 166, 170 (5th Cir. 1992); Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation."); Crop-Maker Soil Services, Inc.

25

v. Fairmount State Bank, 881 F.2d 436, 440 (7th Cir. 1989).  The preclusive effect of a confirmed

plan or reorganization is binding upon every entity that holds a claim or interest in the

bankruptcy irrespective of whether a creditor is impaired under the plan or whether such creditor

has accepted the plan.  Id.; see also 5 Collier on Bankruptcy ¶ 1141.02[1] (15th ed. 2004).

This Court expressly stated in its confirmation order that "[e]ach Debtor Corporation is

insolvent."  The Committee, which represented the interests of all investors-turned-shareholders,

actively participated in and was a "party" to the bankruptcy.  Plaintiffs, whether directly or

through the Committee, had numerous opportunities to litigate, investigate and question the

debtors' insolvency prior to confirmation of the Plan.

The confirmation order constitutes a full and final judgment on the merits as to the

debtors' insolvency, and Plaintiffs cannot reopen or relitigate that issue.  Because the foundation

upon which Plaintiffs' claims rest may not be relitigated as a matter of law, their claims fail and

must be dismissed.

Similarly, this Court's approval of E&Y's fees is res judicata as to any subsequent claims

for malpractice or misconduct as to work performed under the supervision of the Court.  See

Grausz, M.D. v. Englander, 321 F3d 467 (4th Cir. 2003); In re Iannochino, 242 F3d 36 (1st Cir.

2001); In re Intelogic Trace, Inc., 200 F3d 382, 387-88 (5th Cir. 2000); In re Southmark Corp.,

163 F3d 925 (5th Cir. 1999); In re Coastal Plains, Inc., 326 BR 102  (Bankr. ND TX 2005); and

In re Blair, 319 BR 420 (Bankr. D MD 2005).

Here, E&Y filed fee applications.  The Committee (representing the unsecured creditors

including the Plaintiffs and the class that they purport to represent) actively participated in the

fee application process and filed objections to the fees claimed by E&Y.  Thereafter, following

confirmation of the Plan proposed by the Committee, E&Y and Seven Fields (then owned and

operated solely by the Plaintiffs and the class they purport to represent) filed a Stipulation which

proposed to settle E&Y's fees.  This Court approved the Stipulation and a $125,000 payment to

E&Y.  The doctrine of <u>res judicata</u> bars Plaintiffs from relitigating all issues pertaining to the

nature, quality and scope of Defendants' work.

The Plaintiffs direct our attention to the case brought against E&Y by the former

shareholders of the Debtors, Barbara L. Reilly and Thomas Reilly.  <u>Reilly v. Ernst & Young,</u>

<u>LLP</u>, No. Civ. Div. AD 97-1002, 2003 WL 22761810 (Pa. Com. PL. Nov. 20, 2003) (hereinafter

the "Reilly State Court Action").  Barbara L. Reilly and Thomas Reilly (collectively, the

"Reillys") were the prepetition shareholders of the Debtor.  Under the Plan, all of the Reillys'

interest was eliminated.  The Reillys brought suit in State Court against E&Y, 16 years after

confirmation of the Plan and seven years after the case was closed on the Bankruptcy Court

docket, on theories of negligence, civil conspiracy and fraudulent misrepresentation.  The Reillys

asserted that they suffered a loss of their property in the Bankruptcy Case due to the misdeeds of

E&Y.  E&Y raised many of the same defenses in that case that it now raises before this Court.

The State Court entered a verdict in favor of Barbara Reilly.  That decision is presently on

appeal.

Plaintiffs assert that the doctrine of non-mutual offensive collateral estoppel (also known

as non-mutual issue preclusion) bars the Defendants from asserting the defenses they now raise

because an earlier trial court has passed judgment on these same defenses when the Defendants

raised them in Reilly State Court Action.

"Offensive collateral estoppel occurs when a plaintiff seeks to estop a defendant from

relitigating an issue which the defendant previously litigated and lost against another plaintiff."

Raytech Corp. v. White, 54 F3d 187, 190 n.5 (3rd Cir. 1995) citing Parklane Hosiery Co. V.

Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

Collateral estoppel is permissible as to a given issue if: (1) the identical issue was

previously adjudicated; (2) the issue was actually litigated and decided in the previous

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the

resolution of the issue was necessary to support a valid and final judgment on the merits. Bear,

Stearns & Co., Inc. v. 1109580 Ontario, Inc., 409 F3d 87, 91 (2d Cir. 2005). "These four factors

are required but not sufficient." Id. "In addition, a court must satisfy itself that application of the

doctrine is fair." Id. See also Parklane Hosiery, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552

(1979); Raytech Corp. v. White, 54 F3d 187, 190 (3d Cir. 1995).

In the Reilly State Court Action, Defendants were prohibited from introducing into

evidence much of the proof of what took place in the Bankruptcy Case. It is not possible for the

Defendants to have had a full and fair opportunity to litigate when the most essential facts were

excluded by the State Court. Further, many of the factual findings of the State Court were based

on "deemed admissions" rather than upon actual evidence presented at trial.

"The inconsistency of opinions where multiple parties are suing one defendant in similar

(albeit not identical) fact situations is the exact instance where it would be unfair. . .to allow the

use of offensive collateral estoppel against the defendant." Erbeck v. United States, 533 F.Supp.

444, 447 (SD OH 1982) citing Parklane, 439 U.S. at 330-31 n.14, 99 S.Ct. at 651 n.14.

This Court determined that the Debtors were insolvent. The state court based its

judgment on findings to the contrary.

28

The use of offensive collateral estoppel is not appropriate in this case.

For all of the above reasons, dismissal of the Complaint is warranted under the doctrines

of res judicata, collateral estoppel and judicial estoppel.

### D.  Other Grounds for Dismissal

The Defendants raise other issues such as Statute of Limitations, Failure to State a Claim

for Professional Negligence, Fraud or Negligent Misrepresentation, and Immunity from

Liability.  Having concluded that the Complaint must be dismissed as an improper shareholder

derivative suit and for reasons of res judicata, collateral estoppel and judicial estoppel, we need

not address the additional grounds that are raised by the Defendants in the Motion to Dismiss.

### V.  Conclusion

After confirmation of the Plan, all of the Debtors' assets were transferred to Seven Fields.

The Plaintiffs and the class that they purport to represent then owned all of the stock of Seven

Fields and had complete and total control of its assets.  Seven Fields elected to liquidate those

assets.

The Plaintiffs now assert that the assets would have been more valuable had they been

held for development rather than liquidated.  They seek to hold the Defendants liable for causing

the sale.  They assert that the sale occurred because the Defendants erroneously classified the

Plaintiffs and their class as creditors in the bankruptcy case rather than investors, and as a result

it appeared that the Debtor had a significant amount of debt rather than having significant equity

and that if the Plaintiffs had known that there was equity, they wouldn't have felt compelled to

promptly liquidate the assets at reduced prices.

The Complaint is a sham.  The status of the Plaintiffs and their class was always unclear

in the bankruptcy case.  As the Committee's own Plan states:

> "Bondholders" and "Investors" - these groups of creditors were designated as
> indicated in the Schedules filed by Debtors.  These designations may not be
> wholly accurate, depending upon characterizations of the relationships between
> the named persons in the schedules and the Debtors.  However, for purposes of
> the Bankruptcy Code and the Plans filed these parties are all unsecured creditors.
> The total scheduled debt is $69,194,842.74.

The Committee represented the Plaintiffs and the purported class.  No matter whether they were

equityholders or creditors, they were the only impaired class of creditors under the Plan and

under the terms of the Plan, all of the Debtors' assets were transferred to Seven Fields and the

Plaintiffs and the Class received all of the stock of Seven Fields and it was the Plaintiffs and

their class who were given the task under the Plan of achieving the goal of full payment to its

group:

> Assets will be sold or managed frugally, carefully, responsibly and utilizing
> sound business practice.  Undeveloped assets will be developed as and when fair
> and reasonable proposals have been received, studied and approved.  All activities
> of the surviving reorganized corporation shall seek to achieve the goal of full
> payment to Class 5 creditors.

E&Y's engagement ended upon confirmation of the Plan.  The Plaintiffs and their class

were in charge of the assets and of making a determination how to maximize the value of the

assets. All other creditors were paid in full under the terms of the Plan and the Plaintiffs were

the only creditor group left to benefit from the development or liquidation of the assets.  Whether

they were considered creditors or equityholders in the Bankruptcy Case was an insignificant

point.

Bankruptcy lawyers in drafting plans of reorganization lately have included release

clauses for professionals.  This Court has refused to allow them.  If a professional is at fault, he should be held accountable.  But, this case is spurious.

The Complaint will be dismissed.

An appropriate Order will be entered.


Warren W. Bentz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE                                          :          BANKRUPTCY NO. 86-21474
                                               :          CHAPTER
EARNED CAPITAL CORPORATION,                    :
DEBTOR                                         :
                                               :
                                               :
  MARY GERUSCHAT, DOLORES                      :          ADVERSARY NO. 04-3236
  SPENEY, ANTOINETTE MOROCCO,                  :
  DONNA MOROCCO BUXTON,                         :
  ET AL, Plaintiffs                            :
      vs.                                      :
  ERNST & YOUNG, LLP AND                        :
  CHARLES MODISPACHER,                          :
  Defendants                                   :

ORDER

This ___2___ Day of ~~August,~~ *September* in accordance with the accompanying Opinion, it shall be,

and hereby is, ORDERED as follows:

1. The Bankruptcy Clerk is directed to reopen the bankruptcy case.

2. Plaintiffs' Motion to Strike Defendants' Notice of Removal is REFUSED.

3. Plaintiffs' Motion to Remand Case to State Court is REFUSED.

4. Defendants' Motion to Dismiss Plaintiffs' Complaint is GRANTED.


Warren W. Bentz
United States Bankruptcy Judge

FILED

SEP 07 2005

CLERK, U
WEST. D

FILED

SEP 02 2005

U.S. BANKRUPTCY COURT
WEST DIST OF PENNSYLVANIA